UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERRAN DASHAWN MCLAURIN,

        Petitioner,                CASE NO. 2:17-11737

      v.                          HON. GEORGE CARAM STEEH

JOHN DAVIDS,[1]

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Gerran Dashawn McLaurin, ("petitioner"), incarcerated at the Ionia

Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application,

petitioner challenges his conviction for carjacking, M.C.L.A. § 750.529a;

possession of a firearm during the commission of a felony (felony-firearm),

M.C.L.A. § 750.227b; assault with intent to do great bodily harm less than

murder, M.C.L.A. § 750.84; and third-degree fleeing or eluding a police

_____

    [1] The Court amends the caption to reflect the current warden of
petitioner's incarceration.

officer, M.C.L.A. § 257.602a(3)(a).  For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

On August 20, 2014, Raymond Schultz locked his 2011 Chevrolet Equinox and was walking towards a party store on E. Jefferson when he heard a male voice and felt a tug on his shirt.  As he turned around, his assailant put a gun in his face and said, "This is a real gun.  This is a carjacking.  Give me the keys."  Schultz struggled with his assailant and sustained a gunshot wound in the left buttock area.  When his assailant aimed the gun at his face, Schultz threw the keys to his assailant and fell to the ground.  The assailant then drove off with the Equinox.  (T. 12/9/2014, pp. 33-40).  Schultz was taken to Detroit Receiving Hospital where he was classified as "level one," which is code for "potential for immediate threat to life or limb" due to the proximity of the wound to his pelvis and abdomen.  (*Id.,*  p. 23).

Cheryl Harrison testified that she was in the parking lot with her boyfriend during the carjacking.  They observed the incident and came to

Schultz's aid, waiting for help to arrive. (T. 12/8/2014, pp. 234, 237; T. 12/9/2014, pp. 15, 41).

Officer Kevin Briggs of the Detroit Police Department testified that later that day they observed an individual driving a burgundy Equinox in reverse and at a high rate of speed, going through stop signs and over a curb. The Equinox then went forward and was pursued by Officer Briggs who testified that he looked directly at petitioner, as petitioner drove the vehicle. The passenger-side tire flew off when the Equinox hit the curb, but petitioner continued to drive on three wheels until the airbags deployed, when petitioner hit another curb. When petitioner ditched the vehicle, Officer Briggs pursued petitioner on foot and quickly apprehended him. (T. 12/9/2014, pp. 92-99).

A line-up was conducted the next day. Schultz (the victim) narrowed down the line-up to two suspects, one of which was petitioner. During the line-up, petitioner was laughing and looking down so as to avoid being recognized by Schultz. (*Id.,* pp. 44, 54-57, 154). Harrison and Saunders, who both watched the incident, immediately identified petitioner as the assailant during the live line-up which took place on August 21, the day after the carjacking. Harrison was "a hundred percent sure." (T. 12/8/2014,

pp. 226-228). Petitioner was represented by counsel at the time of the line-up. (T. 12/9/2014, pp. 151-152).

Petitioner's conviction was affirmed. *People v. McLaurin*, No. 325780, 2016 WL 3639898 (Mich. Ct. App. July 7, 2016) *lv. den.* 500 Mich. 947, 890 N.W.2d 672 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Mr. McLaurin is entitled to a new trial for a violation of his right to counsel under US Const, AMS VI, XIV and Const 1963, Art 1, § 20, where a breakdown in the relationship with counsel necessitated that substitute counsel be appointed.

II.  Mr. McLaurin was denied his rights to effective assistance of counsel under US Const, AMS VI, XIV and Const 1963 Art 1, § 20 by trial counsel's failure to call an expert witness to explain the unreliability of eyewitness testimony.

III.  Defendant was denied his due process right to a fair trial when the results of a  constitutionally improper and highly suggestive out-of-court identification procedure employed by the police was introduced at trial and trial counsel proved ineffective when he failed to move the out-of-court identification be excluded from evidence. US Const, AMS V, VI, XIV; Const 1963, Art 1, § 20; Art 1, § 17.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review

for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected petitioner's third claim under a plain error standard because he failed to preserve the issue as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638

(6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018).[2]

## III. DISCUSSION

### A. Claim # 1. The counsel of choice claim.

Petitioner first argues that his right to counsel of choice was violated

when the judge denied his motion to substitute counsel three days before

trial. Petitioner brought his motion on December 5, 2014, which was three

days before the first day of trial.

The Michigan Court of Appeals rejected petitioner's claim as follows:

The trial court previously appointed substitute defense counsel in
October 2014. At a final pretrial conference on Friday, December
5, 2014, three days before trial was scheduled to begin,
defendant's second appointed counsel informed the trial court of
his belief that defendant lacked confidence in him, in part because
of counsel's inability to arrange a plea offer that was acceptable
to defendant. Defendant stated:

I asked him and my last attorney numerous times to fill out
motions for me that ... haven't got [sic] done. And I asked them
things about my case that they haven't or couldn't tell me about
....

Neither one of them feels like they can fight for my life. This is my

---

[2]Respondent urges this Court to deny petitioner's third claim on the ground that it is procedurally defaulted because petitioner failed to object at trial. Petitioner argues that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

life on the line and I feel that they [are] not fighting for me. And I need somebody that ... I feel like they can fight for my life like it's theirs on the line.

The trial court denied the motion for substitute counsel, stating:

I would indicate ... that this is your second request for an attorney. There is in the court file a written request that you gave me sometime ago during the pendency of this case before this Court in which you indicated that your prior counsel ... did not have, in your words, the heart in representing you in your case.

You indicated that she was not taking your case seriously, that she was not working with you and that she was working against you. That's a letter that you had written to me sometime ago during this case.

Based on that representation, you were brought before the Court. I heard your arguments, which were consistent with your letter and very similar to what I've just heard today. And although probably not required, I gave you the benefit of the doubt and I appointed you new counsel—Mr. Brown, very experienced attorney here before this Court. And ... when I did that, I told you that it was likely to be the only appointment I would make, and that this was not going to be a revolving door of attorneys requested by you. And I believe you agreed on the record.

Having said that, we were here earlier this week at which time, ... this issue was addressed with regard to what the plea offer was or was not and there was some dispute about or some misunderstanding about what the offer was. And I specifically recall you indicating is there a way we can push this back, meaning is there a way we can push this trial back. And I believe either your counsel or myself said no that's not gonna happen.

It's interesting that only a couple days after that and you have not gotten a more favorable offer here, that ... now ... there has been in the last couple days a breakdown sufficient that you're asking

for a new attorney. ... [S]o just factually I think that that needs to be clear.

And the only thing I've heard in terms of the basis for that is essentially the same argument that you had made about your prior counsel; that essentially you don't think that the attorney has your best interest at mind, in heart because they're doing what any good attorney would do is trying to get you the most options available to you.

Certainly you have the right to a trial, which I'm sure you're going to be exercising, but the alternative is to make sure that you have an informed decision made. And the way you get an informed decision is finding out the pros and cons of going to trial, which Mr. Brown has provided to you, and then compare that with the best offer you can get from the prosecution, which Mr. Brown has worked hard to obtain, including speaking to the prosecution's supervisor.

* * *

Here, I've heard argument that simply you don't think Mr. Brown has your best interests at ... heart, because he's tried to get you the best possible plea offer available.

Now it's your decision whether to accept the plea or not, but Mr. Brown, like any good attorney, is gonna try to give you the best options .... And he's worked hard to give you those options, but apparently ... you think he does not have your best interest at heart because he must think you're guilty because he's trying to get you a good deal from the prosecution ....

The record amply supports the trial court's conclusion that defendant

failed to demonstrate good cause for a second substitution of trial counsel.

Defendant made only general complaints that defense counsel was

unprepared for trial and failed to communicate with defendant. Defendant

offered nothing to substantiate that he and defense counsel had a

legitimate difference of opinion regarding any specific fundamental trial

tactic, or that defense counsel otherwise performed inadequately, lacked in

diligence, or exhibited disinterest in his case.

The record also amply supports the trial court's implicit conclusion

that defendant's second substitution of counsel, only three days before

trial, would unreasonably disrupt the judicial process. As the trial court

found, defendant made some of the same arguments in support of his

motion to substitute his first defense counsel, and defendant also had

recently mentioned a trial adjournment.

Accordingly, the trial court did not abuse its discretion in denying

defendant's second request for substitute counsel. *McLaurin*, 2016 WL

3639898, at *1–3 (internal citations omitted).

The Sixth Amendment right to the assistance of counsel does not

guarantee a criminal defendant that he will be represented by a particular

attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351

(6th Cir. 1993)(citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624

(1989)).  A criminal defendant who has the desire and the financial means

to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25).  However, while a criminal defendant who can afford his own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F.3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)).  Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985).  "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez,* 548 U.S. at 151-52) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have

recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.")(internal citations omitted). Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64. Although all of the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[,]" *Martel,* 545 U.S. at 664, the Supreme Court in *Martel* did not require, as a matter of federal constitutional law, that a trial court must engage in an inquiry with a criminal defendant concerning the nature of his complaints against counsel

before denying a motion for substitution. The Supreme Court in *Martel* held that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the nature of his complaints, where the motion was untimely and the court was ready to render a decision in that case. *Id.* at 664-66. There is no clearly established federal law from the Supreme Court requiring an inquiry by the trial judge into the nature of a defendant's dissatisfaction with his attorney prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law). Thus, in the absence of a showing that a habeas petitioner received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his counsel before denying a motion for substitution of counsel would not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366-67 (6th Cir. 2013).

This Court first notes that petitioner's request for substitute of counsel was untimely because it was made three days before trial. Furthermore, petitioner brought a motion to replace his first appointed counsel based on

the same allegations.  The trial court judge granted his motion for new

counsel, giving petitioner "the benefit of the doubt," and informed petitioner

that "this was not going to be a revolving door of attorneys requested by

you.  And I believe you agreed on the record."  The Sixth Circuit has noted

that when "the granting of the defendant's request [for a continuance to

obtain new counsel] would almost certainly necessitate a last-minute

continuance, the trial judge's actions are entitled to extraordinary

deference." *U.S. v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008)(quoting

*United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)).  The Sixth Circuit

has also rejected similar requests for the replacement of counsel as being

untimely. *See U.S. v. Trujillo,* 376 F.3d 593, 606-07 (6th Cir. 2004)(motion

for substitution of counsel was untimely, coming only three days prior to the

start of the trial); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir.

1996)(motion to continue to obtain new counsel untimely when it was made

the day before trial); *United States v. Watson,* 620 F. App'x 493, 501 (6th

Cir. 2015)(request for new counsel made 19 days before trial untimely);

*United States v. Fonville,* 422 F. App'x 473, 480 (6th Cir. 2011)(request for

new counsel made less than a month and a half before trial not timely);

*United States v. Chambers,* 441 F.3d 438, 447 (6th Cir. 2006)(no abuse of

discretion to deny request for new counsel made a month and a half before trial).  In the present case, petitioner's request for a continuance to obtain new counsel three days before trial was untimely, particularly where petitioner was granted substitute counsel and previously and agreed with the trial judge's statement that this was not be going to be a reoccurring event.

Moreover, this Court notes that petitioner had already discharged his first attorney and sought three days before trial to discharge his second counsel and obtain what would have been his third attorney.  There had already been delays in the case due to petitioner's replacement of his first attorney.  Permitting petitioner to discharge his second attorney in order to obtain yet a third one would have caused even further delays, thus, the trial court did not err in denying petitioner's request for substitute counsel.  *See e.g. United States v. Ammons*, 419 F. App'x 550, 552 (6th Cir. 2011).

Second, petitioner failed to establish good cause for substitution of counsel, where he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. *See Jennings*, 83 F.3d at 149.  Petitioner brought the same conclusory statements before the court that were brought

when he initially sought substitution of his first counsel. The statements were initially found void of any evidence of any irreconcilable conflict or total lack of communication. *See e.g. Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003). The trial court judge found that each time petitioner complained, the complaint pertained to his attorney not having his best interest in mind, because the attorney was merely doing what any good attorney would do by trying to get the most options available. A conclusory allegation that an attorney is not supportive or does not have a petitioner's interest in mind does not establish that there was a serious conflict or inability to communicate that would justify the substitution of counsel, particularly where petitioner's motion to substitute was untimely. *See United States v. Justice*, 14 F. App'x 426, 430-31 (6th Cir. 2001). Thus, the record in this case does not demonstrate that the disagreements between petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Third, the judge sufficiently inquired into petitioner's allegations of ineffectiveness against counsel and appointed substitute counsel when the same allegations were initially brought before the court. Petitioner's motion

sought the appointment of yet a third attorney.  In light of the fact that there were "lengthy discussions" about the alleged conflicts between petitioner and his counsel, there was no abuse of discretion in denying petitioner's motion for substitute counsel. *See U.S. v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009).

Finally, petitioner is unable to show that he was prejudiced by the failure of the trial court to grant petitioner a third appointed attorney, in light of the fact that he received effective assistance of counsel at trial. *See Vasquez*, 560 F.3d at 468.  "The strained relationship" between petitioner and his attorney was not a "complete breakdown in communication" that prevented petitioner from receiving an adequate defense. *Id.*  Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim # 2. The ineffective assistance of counsel/expert witness claim.

In his second claim, petitioner contends that he was deprived of the effective assistance of trial counsel when counsel failed to call an expert witness to testify about the unreliability of eyewitness identification.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two- prong test. First, the defendant must demonstrate that, considering all of the

circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v.*

*Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1), a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his second claim, petitioner contends that his trial counsel was ineffective for failing to call an expert witnesses in the areas of eyewitness identification testimony.

As an initial matter, petitioner has presented no evidence either to the state courts or to this Court that he has an expert witness who would be willing to testify regarding eyewitness identification. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence that an expert witness would testify and what the content of this witness' testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, with respect to petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness

about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011); *see also Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004)(upholding as reasonable the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

Moreover, two eyewitnesses testified that they watched the carjacking. Although petitioner argued misidentification, the jury chose to believe the two eyewitnesses. Petitioner has failed to show how an expert witness in eyewitness identification would have assisted him.

Finally, although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel discredited the victim who testified that he had chosen two people in a lineup that he thought could have been the perpetrator. Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of

expert witness on identification, where counsel elicited testimony to discredit the victim's identification testimony. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006). Petitioner is not entitled to habeas relief on his second claim.

## C. Claim # 3. The suggestive identification claim.

In his third claim, petitioner alleges that he was subjected to an impermissibly suggestive pre-trial identification. Petitioner further argues that trial counsel was ineffective for failing to file a pre-trial motion to suppress the allegedly suggestive identification.

The Michigan Court of Appeals applied plain error review to the suggestive identification claim and then denied it on the merits as follows:

> The record does not disclose any evidence suggesting that Harrison's or Saunders's trial identifications of defendant arose from an unduly suggestive pretrial identification procedure. Harrison and Saunders testified that in daylight on August 20, 2014, they saw defendant in the same store parking lot where Saunders had just parked with Harrison inside his truck. The attention of Harrison and Saunders was drawn to an SUV parked approximately 20 feet away in the same lot, where they heard the sounds of a struggle and yelling. Harrison testified that she had approached the SUV, had seen the victim and defendant wrestling, and heard defendant threaten to shoot the victim if he did not give defendant his SUV keys. Saunders explained that he saw defendant through the back window of his truck, but had an unimpeded view. Harrison and Saunders similarly described defendant's basic appearance: a young African–American man, between 20 and 30 years of age, with a

medium build, and who possessed a handgun during the assault. They differed with respect to whether defendant had worn a hat or hood, an orange or a red T-shirt, black or brown pants, or had any facial hair, but those discrepancies affect only the weight of their identification testimony, not its admissibility. The lineup attended by Harrison and Saunders occurred one day after the crime. The testimonies of Harrison, Monroe, and Saunders reflected that they identified defendant promptly and with certainty.

The only evidence that defendant cites purportedly casting doubt on the identifications by Harrison and Saunders consists of his own December 9, 2015 affidavit. In the affidavit, defendant maintains:

> That I informed trial counsel Mark Brown that on 8/21/14, at Detroit Detention Center (Mound), witness Cheryl Harrison was brought to the bullpen by Detroit Police Officer Lawrence Mitchel, and pointed me ... out, stating that I was perpetrator of said crimes.

This attestation contradicts the evidence at trial. Harrison, Monroe, and Saunders agreed that Officer Lawrence Mitchel only escorted Harrison and Saunders to and from the lineup room. Harrison, Monroe, and Saunders likewise agreed that no one had prompted Harrison's and Saunders's identifications of defendant. And Monroe testified that the lineup participants could not see the other people in the lineup room.

We also note that defendant offers no factual substantiation for his argument that an attorney present at the lineup "was functioning as defendant's counsel, or the prosecutor," or that a reasonable possibility exists that "defendant's constitutional rights were not protected." The testimony of Harrison, Saunders, and Monroe established that the lineup attorney attended the lineups only to protect defendant's rights. No evidence indicated that the attorney failed to protect

defendant's rights during the lineup. Defense counsel noted, in his closing argument, that the attorney was a former prosecutor.

In sum, the record does not support defendant's claim that a reasonable likelihood of suggestion existed during Harrison's and Saunder's August 21, 2014 identifications of defendant. Because no likelihood of misidentification existed, defense counsel was not ineffective for failing to make a meritless objection to Harrison's and Saunders's identification testimony.

*McLaurin*, 2016 WL 3639898, at *11–12 (internal citations omitted).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

1. the witness's opportunity to view the criminal at the time of the crime;

2. the witness's degree of attention at the time of the crime;

3. the accuracy of the witness's prior description of the defendant;

4. the witness's level of certainty when identifying the suspect at the confrontation; and,

5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner initially alleges that the attorney present at the lineup was not acting on his behalf, but on the behalf of the State. The Michigan Court of Appeals reasonably rejected petitioner's allegation by finding that the lineup attorney was only there to protect petitioner's rights and that there was no evidence presented that the attorney acted to the contrary. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman*

*v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner also alleges that an officer pointed out petitioner to Cheryl Harrison during the lineup identification, resulting in a suggestive and unreliable identification.

The Michigan Court of Appeals again reasonably found:

> This attestation contradicts the evidence at trial. Harrison, Monroe, and Saunders agreed that Officer Lawrence Mitchel only escorted Harrison and Saunders to and from the lineup room. Harrison, Monroe, and Saunders likewise agreed that no one had prompted Harrison's and Saunders's identifications of defendant. And Monroe testified that the lineup participants could not see the other people in the lineup room.

*McLaurin*, 2016 WL 3639898, at *12.

Petitioner's allegations are not consistent with the record. (T. 12/8/2014, p. 227-228, T. 12/9/2014, pp. 81, 148-149). Petitioner has presented no evidence to show that an allegedly suggestive pre-trial identification line-up took place with Ms. Harrison.

Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*,

160 F.3d at 287. Petitioner is not entitled to habeas relief because his claim that he was subjected to an unduly suggestive identification procedure is conclusory and unsupported. *See Champ v. Zavaras*, 431 F. App'x 641, 654 (10th Cir. 2011).

In this case, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Harrison testified that during the carjacking she had a clear view of petitioner. Moreover, the length of time between the carjacking and the challenged identifications was only one day and Ms. Harrison did not identify anyone else as being the perpetrator. These factors all support a finding that an independent basis existed for Ms. Harrison's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001.).

Moreover, with respect to Ms. Harrison's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d 459, 473 (6th Cir. 2005); *see also United States v. Meyer*, 359 F.3d 820, 826 (6th Cir.

2004)(finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that Ms. Harrison watched while the carjacking took place, it was not unreasonable for the state courts to conclude that Ms. Harrison paid a high degree of attention to the assailant.

Moreover, even if there would have been slight discrepancies between Ms. Harrison's description of the assailant and petitioner's appearance, this would be insufficient to render the in-court identification suspect, in light of the fact that Ms. Harrison was able to get a good look at petitioner and testified that she was certain in her identification of petitioner as being the suspect. *See United States v. Hill,* 967 F.2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

Finally, Cheryl Harrison testified that when she identified the

perpetrator at the line up, it took her "Literally one second. Soon as I laid eyes on him, I knew that it was him." (Tr. 12/9/2014, p. 8). The reliability of Ms. Harrison's in-court identification is supported by the fact that she "testified without equivocation" that petitioner was the assailant. *Howard,* 405 F.3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848.

In the present case, petitioner was caught by the police a short time after the carjacking, driving the victim's burgundy Equinox near the crime scene. Petitioner attempted to flee from the police when they went to arrest him. Given this evidence, any error in the admission of Ms. Harrison's allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis,* 21 F. App'x 360, 363 (6th Cir. 2001); *see also Williams v. Stewart,* 441 F.3d 1030, 1039 (9th Cir. 2006)(strong circumstantial evidence linking petitioner to crime scene rendered

admission of pre-trial identification harmless); *Flaherty v. Vinzant,* 386 F.

Supp. 1170, 1175 (D. Mass. 1974)(admission of suggestive identification

harmless error at best where petitioner had handkerchief folded in the

shape of a mask in his pocket at the time of his arrest).

Petitioner failed to show that Ms. Harrison's in-court identification was

the product of a suggestive pre-trial identification.  Indeed, "the Supreme

Court has never held that an in-court identification requires an independent

basis for admission in the absence of an antecedent improper pre-trial

identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich.

2004).  Moreover, "the Due Process Clause does not require a preliminary

judicial inquiry into the reliability of an eyewitness identification when the

identification was not procured under unnecessarily suggestive

circumstances arranged by law enforcement."  *Perry v. New Hampshire*,

565 U.S. 228, 248 (2012).  There is no suggestion that Ms. Harrison was

subjected to a suggestive pre-trial identification; accordingly, Ms. Harrison's

in-court identification of petitioner does not entitle him to habeas relief.

Finally, in light of the fact that petitioner has failed to show that he

was subjected to any pre-trial identification procedure that was unduly

suggestive, he has failed to show that his lawyer was ineffective for failing

to move for suppression of the pre-trial identifications.  *See Perkins v. McKee,* 411 F. App'x 822, 833 (6th Cir. 2011).  Petitioner is not entitled to relief on his third claim.

### D.  A certificate of appealability/leave to appeal *in forma pauperis.*

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.


The Court denies petitioner a certificate of appealability because he

has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). Petitioner is denied leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## IV. CONCLUSION

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability or leave to appeal *in forma pauperis*.

**SO ORDERED.**

Dated: May 21, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 21, 2019, by electronic and/or ordinary mail and also on Gerran Dashawn McLaurin #729342, Ionia Maximum Correctional Facility, 1576 W. Bluewater Highway, Ionia, MI 48846.

s/Barbara Radke
Deputy Clerk

---